## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ACE OILFIELD RENTALS, LLC,      )
                                )
            Plaintiff,          )
                                )
v.                              )      Case No. CIV-15-672-D
                                )
WESTERN DAKOTA AND FABRICATION, )
LLC, a South Dakota limited liability company, )
DOUG KERKVLIET, an individual, and )
TUCKER PANKOWSKI, an individual, )
                                )
            Defendants.         )

## ORDER

Before the Court is Plaintiff's request for damages following the Clerk's Entry of

Default against Defendant Western Dakota [Doc. No. 68].[1]   The Court conducted an

evidentiary hearing on March 1, 2017; supplemental filings by Plaintiff followed the

hearing [Doc. Nos. 71, 72, 73].   Western Dakota did not appear at the hearing.   The Court

has reviewed the evidence and Plaintiff's submissions.   As stated more fully below, the

Court awards Plaintiff actual damages in the amount of $454,554.90; nominal damages in

the amount of $1.00; punitive damages in the amount of $89,952.80; and attorney's fees in

the amount of $108,390.25.

---

[1]Plaintiff's Motion for Judgment [Doc. No. 66] was granted on February 1, 2017, in light of Western Dakota's repeated failures to respond to the Court's Orders [Doc. No. 69].   By the same Order, the Court set a hearing on Plaintiff's requested damages.

## BACKGROUND

Plaintiff Ace Oilfield Rentals, LLC, sells and leases trailer-mounted hydraulic catwalks (the "HydraCat") in the oil drilling industry. Plaintiff and Western Dakota entered into a manufacturing agreement ("Manufacturing Agreement") on April 29, 2013. *See* Pl.'s Ex. 2 at Hr'g on Damages. Pursuant to the Manufacturing Agreement, Plaintiff committed to use Western Dakota as its sole and exclusive manufacturer of the HydraCat. *Id*. at 1. Western Dakota agreed to hold all Plaintiff's confidential, proprietary and trade secret information "in strict confidence" and not disclose any information to third parties absent "express prior written permission" from Plaintiff. *Id.* at 2.

The Manufacturing Agreement also included a non-compete clause, which precluded Western Dakota from soliciting, contacting or communicating with "any person, company, or business that is or was a client, customer, or prospective client" of Plaintiff. *Id.* Moreover, Western Dakota agreed not to engage in the same or similar business as Plaintiff. *Id.* If a client or customer asked to purchase a HydraCat from Western Dakota directly, Western Dakota was required to notify Plaintiff. *Id.* Only after full disclosure and approval from Plaintiff could Western Dakota independently lease or sell such equipment. *Id.*

From April 2013 through November 2014, Plaintiff and Western Dakota operated within the terms of the Manufacturing Agreement with Western Dakota manufacturing 10 HydraCats for Plaintiff. *See* Pl.'s Mot. for Partial Summ. J. at 2. In early November 2014, Plaintiff negotiated with Consolidated Wellsite Services, LLC ("Consolidated"), for

the purchase of HydraCat No. 11, which Western Dakota had recently manufactured at Plaintiff's request pursuant to the Manufacturing Agreement. *Id*. at 6. While Plaintiff and Consolidated were negotiating the sale of HydraCat No. 11, Consolidated abruptly abandoned the transaction. *Id*. The president of Consolidated, Bill Benedick, advised Plaintiff that Western Dakota had independently sold Consolidated a separate HydraCat at a lower price. *Id*. *See also* Pl.'s Ex. 3 at Hr'g on Damages; Pl.'s Pet. at 3. Moreover, Western Dakota refused to deliver HydraCat No. 11 to Plaintiff. Pl.'s Mot. for Partial Summ. J. at 5.

In addition, Western Dakota sold a HydraCat to Continental Industries Services, LLC ("Continental"), in September 2015, without prior notice to Plaintiff and absent express written consent. *Id*. at 7. *See also* Pl.'s Ex. 4 at Hr'g on Damages.

From late 2014 until the March 1, 2017, hearing on damages, Western Dakota continued to market the HydraCat for sale on its website as its own product. *See* Pl.'s Exs. 5-6, 9 at Hr'g on Damages. Western Dakota invited potential customers to "Buy direct from the manufacturer and SAVE!" Pl.'s Ex. 5 at Hr'g on Damages.

On May 13, 2015, Plaintiff filed a petition in Beckham County District Court in Sayre, Oklahoma, alleging 13 claims against Western Dakota and its two co-owners. [Doc. No. 1-2]. The action was removed to federal court on June 19, 2015, pursuant to 28 U.S.C. § 1332(a)(1). [Doc. Nos. 1, 12, 16].

On March 24, 2016, while this action was pending, Tucker Pankowski, co-owner of Western Dakota, filed Articles of Organization with the South Dakota Secretary of State

for WesDak Welding and Diesel, LLC ("WesDak").   *See* Pl.'s Ex. 10 at Hr'g on Damages.

A search of Custer County, South Dakota property records revealed that on April 13, 2016,

Western Dakota transferred all of its property and assets to WesDak.   Pl.'s Ex. 11 at Hr'g

on Damages.   On May 5, 2016, the South Dakota Secretary of State received Western

Dakota's Articles of Termination dissolving the LLC.   Pl.'s Ex. 12 at Hr'g on Damages.

As of March 1, 2017, WesDak continued to advertise the HydraCat for sale as its own,

using the same web address previously identified with Western Dakota.   Pl.'s Ex. 9 at Hr'g

on Damages.

On July 25, 2016, Defendants Pankowski and Kerkvliet filed petitions in the United

States Bankruptcy Court for the District of South Dakota.   Pl.'s Ex. 13 at Hr'g on

Damages; *see also* [Doc. No. 64].   Upon receiving those notices, the Court stayed the

action as to Pankowski and Kerkvliet.   [Doc. No. 65].   Subsequently, Plaintiff filed a

Motion for Entry of Judgment as to Defendant Western Dakota [Doc. No. 66], to which

Western Dakota failed to respond.

On January 17, 2017, finding "a willful failure by Western Dakota to comply with

the Court's Orders to ensure legal representation of the company in this case," the Court

dismissed Western Dakota's counterclaim and directed the Clerk of Court to enter default

against Western Dakota.   [Doc. No. 67].   In accordance with FED. R. CIV. P. 55(b)(2)(B),

a hearing was held to determine the amount of Plaintiff's damages.   [Doc. No. 70].

Defendant Western Dakota did not appear at the hearing.

## STANDARD OF DECISION

"After an entry of default, a defendant cannot defend a claim on the merits." *Olcott v. Delaware Flood Co.,* 327 F.3d 1115, 1125, n. 1 (10th Cir. 2003) (citations omitted). However, a default judgment does not establish the amount of damages. Plaintiff must establish that the amount requested is reasonable under the circumstances. *Mathiason v. Aquinas Home Health Care, Inc.,* 187 F. Supp. 3d 1269, 1274-75 (D. Kan. 2016). "Damages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Id.* (citation omitted); *Reg'l Dist. Council et al. v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) ("Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount. This requirement ensures that a plaintiff is not awarded more in damages than can be supported by actual evidence." (*citing Klapprott v. United States*, 335 U.S. 601, 611-12 (1949)). "The Court accepts as undisputed any facts set forth by the moving party in affidavits and exhibits." *See Id.*

## DISCUSSION

An award of damages is appropriate in this case. Plaintiff bears the burden of submitting sufficient evidence in support of its damages claim. *Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014). The applicable standard regarding compensatory damages is a preponderance of the evidence. *Wethington v. Swainson*, No. CIV-14-899-D, 2017 WL 1366068, at *2 (W.D. Okla. April 12, 2017). As a federal court sitting in diversity, the Court applies the substantive law of the forum state, Oklahoma. *Hayes*

*Family Trust v. State Farm Fire & Cas. Co.,* 845 F.3d 997, 1005 (10th Cir. 2017). Moreover, the Manufacturing Agreement states that the contract "is to be construed in accordance with and governed by the internal laws of the State of Oklahoma, USA." Pl's. Ex. 2 at Hr'g on Damages.

Plaintiff identifies and seeks damages for 13 claims: (1) breach of contract; (2) misappropriation of trade secrets; (3) conversion; (4) defamation; (5) tortious interference with contracts; (6) tortious interference with prospective economic advantage; (7) deceptive trade practices; (8) omitted; (9) breach of contract (10) fraud; (11) unfair competition; (12) civil conspiracy; and (13) unjust enrichment. [Doc. No. 1-2]. Although Rule 8 permits Plaintiff to "state as many separate claims … as it has, regardless of consistency," double recovery is not permitted under Oklahoma law. *See* FED. R. CIV. P. 8(d)(3); *see also Kruchowski v. Weyerhaeuser Co*., 202 P.3d 144, 153-154 (Okla. 2008).

**<u>Breach of Contract – Count 1</u>**

Recoverable damages in a breach of contract claim consist of the amount that will compensate the aggrieved party for all the harm proximately caused or which would naturally and generally result from a breach in the usual course of things. OKLA. STAT. tit. 23, § 21. In order to recover, the damages must be clearly ascertainable in their nature and origin.[2] *See Id.*

---

[2] The Manufacturing Agreement is not a contract for the sale of goods, but rather a contract for services. Thus, Oklahoma's version of the Uniform Commercial Code does not govern.

Arthur L. Puckett, managing member of Ace, testified at the hearing on damages that Western Dakota sold directly to Consolidated and Continental in violation of the Manufacturing Agreement. E-mail correspondence between Western Dakota and Consolidated, invoices for the sale of the HydraCats to Consolidated and Continental, and the check from Continental to Western Dakota were introduced as exhibits at the hearing. Pl.'s Exs. 3-4 at Hr'g on Damages.

An award in the form of loss profits is generally considered a common measure of damages for a contract breach. *See Florafax Int'l, Inc. v. GTE Mkt Res. Inc.*, 933 P.2d 282, 292 (Okla. 1997). "[I]t frequently represents fulfillment of the non-breaching party's expectation interest, and it often closely approximates the goal of placing the innocent party in the same position as if the contract had been fully performed." *See Id.* "Liability for lost profits arises where the loss of anticipated profits upon breach can reasonably be said to be in the contemplation of the parties at the time of contracting." *See Id.* (*citing Quincy Johnston, Inc. v. Wilson*, 358 P.2d 205, 208 (Okla. 1959)).

Kenneth W. Klingenberg, J.D., CPA, and damages expert opined that Plaintiff lost profits of $393,543.50 from Western Dakota's breach of the Manufacturing Agreement. *See* Pl.'s Ex. 20 at Hr'g on Damages. He testified that over the course of 16 months (August 2013 through November 2014), Plaintiff sold five HydraCats for an average profit of $44,976.40 per unit. *See* Pl.'s Ex. 20-A at Hr'g on Damages. Average sales per month was .31 units. *See Id.* Mr. Klingenberg estimated that 8.75 additional units would have been manufactured and sold over the 28-month period from November 2014 through

February 2017, if Western Dakota had honored the Manufacturing Agreement. *See Id.* He arrived at the lost profits amount of $393,543.50 by multiplying the average profit of $44,976.40 by 8.75 units.

Oklahoma law imposes a general duty to mitigate damages caused by the wrongful act of others. *See Coen v. SemGroup Energy Partners G.P., LLC*, 310 P.3d 657, 668 (Okla. 2013). A victim of a contract breach "may not stand idly by and permit preventable loss to increase." *Tulsa Mun. Airport Trust v. Nat'l Gypsum Co*., 551 P.2d 304, 306 (Okla. 1976). Rather, Plaintiff has a duty to use all reasonable means to suppress the loss. *See Id.* Mr. Klingenberg testified that Plaintiff made "extended efforts" to find other manufacturers to build the HydraCat after Western Dakota's breach. However, they were unable to find another manufacturer as efficient and cost competitive as Western Dakota. Mr. Klingenberg also testified that Plaintiff wanted to avoid increasing the sales price of the HydraCat, and Plaintiff "believed the contract [with Western Dakota] meant something and they should abide by it."

Time, knowledge, opportunity and expense are factors in determining whether an injured party exercised ordinary care to minimize its loss. *See Sackett v. Rose*, 154 P. 1177, 1181 (Okla. 1916). Prior to securing Western Dakota as its "sole and exclusive Manufacturer," Plaintiff contracted with Mitey Titan Industries, a Canadian corporation. Pl.'s Mot. for Partial Summ. J. at 1; *see also* Pl.'s Exs. 1 and 20-A at Hr'g on Damages. In April 2013, Plaintiff chose to exclusively use Western Dakota because Western Dakota

was a domestic company and was able to beat Mitey Titan's manufacturing per unit cost by $8,000.   *See Id.*

Exhibits submitted by Plaintiff at the damages hearing indicate Plaintiff had discussions with two other potential manufacturers, but that no agreement was reached with either company.   The specifics or details of these discussions are not included in the exhibits.   Further, Mr. Klingenberg did not elaborate on what time constraints or cost projections these alternative manufacturers were proposing – only that they could not match Western Dakota's price and speed of production.

Further, the Manufacturing Agreement did not specify an end date for the contract. Mr. Klingenberg based his estimate on continual production by Western Dakota.   In addition to lost profits for the 8.75 units discussed above, Mr. Klingenberg opined Plaintiff lost profits on 10 "forecasted units."   *See* Pl.'s Ex. 20-A at Hr'g on Damages.   He anticipated that had Western Dakota honored the agreement, Plaintiff would have sold 10 additional units through the end of 2017 based on inquiries with potential customers.   It appears that an operator in Canada contacted Plaintiff at the end of 2016 and inquired about purchasing multiple units, but these inquiries are too speculative to form the basis of a lost profits calculation.   Pl.'s Ex. 20-A at Hr'g on Damages.

Although uncertainty as to the amount of damages does not prevent recovery, "uncertainty as to whether any benefit or gain would have been derived at all does bar a claim for damages."   *Chorn v. Williams*, 99 P.2d 1036, 1037 (Okla. 1940).   Damages must not be speculative or contingent.   *See Id.*   Loss of future or anticipated profits is

generally recoverable in a breach of contract action if Plaintiff can show: (1) that the loss was within the contemplation of the parties when the contract was executed; (2) the loss flows directly from the breach; and (3) the loss is capable of being reasonably estimated. *See Florafax Int'l, Inc.*, 933 P.2d at 292. Although the contract had an indefinite term, Plaintiff had been without a manufacturer since Western Dakota's breach in late November 2014. Mr. Klingenberg's summary exhibit and his e-mail correspondence with Plaintiff's counsel indicated that Consolidated had initiated a lease purchase agreement in late 2016 with Plaintiff for three units and had requested three additional units for lease purchase. Pl.'s Ex. 20-A at Hr'g on Damages. Moreover, Steve Asher with Asher Energy and Wireline Service sought to purchase three existing units, including HydraCat No. 11, in early 2017. *Id.* Plaintiff quoted Mr. Asher a purchase price of $450,000.00 for the three units. *Id.* Finally, Aaron Tobias, a Canadian operator working out of Williston, North Dakota, called Plaintiff and was interested in one used machine. *Id.*

Mr. Puckett testified that Western Dakota damaged Plaintiff's ability to meet customer demands. As a result, Plaintiff lost its market superiority and revenue. Mr. Klingenberg surmised that Plaintiff was unable to market the HydraCat effectively because of its dispute with Western Dakota. He further opined that Plaintiff would have sold HydraCats from November 2014 through the March 1, 2017, hearing if Plaintiff had them to sell.

The other "inquiries" by potential customers appear to have been just that; in other words, Plaintiff did not introduce any more formal sales agreements or evidence of serious

negotiations between itself and other companies or individuals proposing to purchase a HydraCat. Nevertheless, the evidence is clear that Western Dakota continued to improperly market the HydraCat as its own through the date of the hearing on damages, thus actively impacting Plaintiff's ability to obtain orders and sales on its own account. The Court finds that lost profits based on 8.75 units at a profit of $44,976.40 each is a reasonable estimate of Plaintiff's lost profits flowing from Western Dakota's conduct.

Based on the foregoing, the Court concludes Plaintiff is entitled to recover $393,543.50 in lost profits due to Western Dakota's breach. The Court finds there is insufficient evidence from which to award damages for additional "forecasted units."

### **Breach of Contract – Count 9**

Plaintiff's breach of contract claim in Count 9 involves Western Dakota's failure to deliver HydraCat No. 11 after Plaintiff provided payment. As a result, Plaintiff contracted with a third party in December 2016 to have the HydraCat delivered. Pl.'s Ex. 18 at Hr'g on Damages. Mr. Puckett testified that HydraCat No. 11 was left out in the elements for 18 months. Plaintiff paid to have it sandblasted, painted, and had to correct the certificate of origin, which was dated incorrectly.

Mr. Klingenberg calculated lost revenue on HydraCat No. 11 to be $44,976.40. Pl.'s Ex. 20-B at Hr'g on Damages. The delivery costs were $3,200. The cost to correct the improper certificate of origin was $335. The sandblasting cost was $1,000, and the painting cost was $11,500. The Court awards Plaintiff actual damages in the amount of $16,035.00 for its breach of contract claim in Count 9. The Court finds that the lost

revenue of $44,976.40 is more appropriately awarded under Plaintiff's cause of action for tortious interference with contract, as more fully stated *infra* at pp. 13-15.

### **Misappropriation of Trade Secrets – Count 2**

Damages can include both the actual loss caused by misappropriation and unjust enrichment resulting from misappropriation that is not taken into account in computing actual loss. OKLA. STAT. tit. 78, § 88(A). In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. *See Id.*

Plaintiff offered no testimony as to the monetary value of its trade secrets. The only testimony offered related to damages in the form of lost profits. Actual damages for lost profits have already been awarded by the Court for breach of contract. Western Dakota was unjustly enriched from its sales of HydraCat Nos. 12 and 13 to Consolidated and Continental. Although Plaintiff introduced invoices and checks for those sales showing that Western Dakota sold a HydraCat to Consolidated for $200,000 and a HydraCat to Continental for $162,500, no evidence was offered as to Western Dakota's profits on those sales. Mr. Klingenberg testified Plaintiff was not privy to Western Dakota's books; thus, he was unaware of what Western Dakota's net profits were on those two sales. Further, Plaintiff did not quantify what a reasonable royalty would be for the use of its trade secrets.

The burden is on Plaintiff to prove damages.   *See Stroud v. Arthur Andersen & Co.,* 37 P.3d 783, 789 (Okla. 2001).   The Court cannot engage in speculation or guesswork in setting an amount of damages.   *See Woods v. Ft. Smith & W. Ry. Co. et al.,* 219 P. 650, 651 (Okla. 1923) (having failed to present evidence showing amount of damages, plaintiff entitled to recover only nominal damages); *Lippoldt v. Cole*, 468 F.3d 1204, 1220-1221 (10th Cir. 2006) ("[N]ominal damages, and not damages based on some undefinable value … are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.") (internal citations omitted).   Accordingly, the Court awards Plaintiff only nominal damages in the amount of $1.00 for misappropriation of trade secrets.

### Tortious Interference with Contracts – Count 5

Plaintiff requests damages for Western Dakota's tortious interference with Plaintiff's negotiation and contractual sale of HydraCat No. 11 to Consolidated. Oklahoma has codified the availability of damages in claims sounding in tort.   For "breach of an obligation not arising from contract, the measure of damages … is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."   OKLA. STAT. tit. 23, § 61.   Under the standard set forth in § 61, "[t]he injured party is to be placed as nearly as may be in the situation which he would have occupied had not the wrong been done."   *Kinetics Technology Int'l Corp. v. Fourth Nat'l Bank of Tulsa*, 705 F.2d 396, 403 (10th Cir. 1983) (internal quotation marks and citation omitted).   As a result of Western Dakota's tortious interference, Plaintiff lost the profit that would have flowed from its sale of HydraCat No. 11 to Consolidated.   Mr.

Klingenberg opined the average profit per unit lost was $44,976.40. Pl.'s Ex. 20-B at Hr'g on Damages. The Court awards Plaintiff actual damages in the amount of $44,976.40 with respect to its tortious interference with contract claim.

Plaintiff may recover punitive damages for tortious interference with a contractual obligation upon proof by clear and convincing evidence that Western Dakota acted either recklessly, intentionally or maliciously. *See* OKLA. STAT. tit. 23, § 9.1. *See also Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.*, 204 P.3d 69, 75 (Okla. 2009). The terms "malicious interference," "intentional interference," and "tortious interference" with a contract are used interchangeably in Oklahoma. *Tuffy's, Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1165 (Okla. 2009). Malice, for purposes of malicious interference, is defined as an "unreasonable and wrongful act done intentionally, without just cause or excuse." *See Id.* It involves some degree of bad faith. *See Id.*

OKLA. STAT. tit. 23, § 9.1 is the current statutory provision that governs claims for punitive damages. It allows an award of punitive damages based upon several enumerated factors: the seriousness to the public arising from defendant's misconduct; profitability of the misconduct to defendant; duration of misconduct and any concealment; degree of defendant's awareness; attitude and conduct of the defendant upon discovery of misconduct; the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.

The Court finds there is clear and convincing evidence here to support an award of punitive damages. Substantial evidence was presented at the hearing that Western Dakota

14

was not an honest broker in its relationship with Plaintiff. Western Dakota took Plaintiff's proprietary information and sold HydraCats as if its own product. Mr. Puckett testified that Western Dakota acknowledged its improper sale to Consolidated. Western Dakota's response was it "wanted out of the agreement." Rather, than pursuing an agreed termination of the Manufacturing Agreement, Western Dakota interfered with Plaintiff's negotiation and sale of HydraCat No. 11 to Consolidated and brokered a sale at $35,000 to $50,000 less than the average retail price in the market, undercutting the competition. Western Dakota kept its negotiation and sale of the HydraCat to Consolidated hidden from Plaintiff. Plaintiff learned of the sale from Consolidated's president. Accordingly, the Court awards Plaintiff $89,952.80 in punitive damages for its interference of contract claim, which represents two times the actual damages.

### **Remaining Counts – Counts 3, 4, 6, 7, 10, 11, 12, 13**

Plaintiff's other claims appear to be subsumed in Plaintiff's breach of contract and tortious interference claims. Double recovery is prohibited in Oklahoma. *See Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 153-154 (Okla. 2008). Moreover, Plaintiff did not present evidence as to damages with respect to these claims. The Court is not free to speculate as to damages, and the burden of proof is on Plaintiff. *See Stroud*, 37 P.3d at 789. Accordingly, the Court declines to assess damages for these claims.

## Expert Fees and Litigation Costs

Plaintiff requests an award of expert witness fees and costs in preparing for the hearing on damages. Expert witness fees are only recoverable when specifically made recoverable by statute. *See Dyer v. Emergency Care, Inc*., 91 P.3d 683, 685 (Okla. Civ. App. 2004) (*citing Andress v. Bowlby*, 773 P.2d 1265, 1268 (Okla. 1989). "There is no common-law rule that permits recovery of expenses of litigation. If any such right exists, it must be statutory." *Oklahoma City Urban Renewal Authority v. Lindauer*, 534 P.2d 682, 685 (Okla. 1975). "Under the ordinary statute costs do not include … the fees of expert witnesses." *See Id*. at 685. In Oklahoma, each party is responsible for its own litigation costs and expenses. *In re Meridian Reserve, Inc.,* 87 F.3d 406, 410 (10th Cir. 1996). Thus, the Court finds Plaintiff may not recover expert witness fees or litigation costs.

## Attorney's Fees

Plaintiff contends it is entitled to an award of attorney's fees as the prevailing party. Oklahoma, like most states, follows the American rule that each party is responsible for its own litigation costs and expenses, including attorney fees. *See In re Meridian Reserve, Inc.,* 87 F.3d at 410. Oklahoma courts are without authority to award attorney fees absent a specific statute or contractual provision. *Id*.; *see also Barnes v. Oklahoma Farm Bureau Mut. Ins. Co*., 11 P.3d 162, 178-179 (Okla. 2000). The Manufacturing Agreement is silent as to payment of attorney fees. Therefore, the Court's authority to award attorney fees must be derived from statute.

The Court may award reasonable attorney's fees to the prevailing party under Oklahoma's Uniform Trade Secrets Act if "willful and malicious misappropriation exists." OKLA. STAT. tit. 78, § 89(3); *see also Pre-Paid Legal Services, Inc. v. Cahill*, 171 F. Supp. 3d 1219, 1228 (E.D. Okla. 2016) (employer sufficiently alleged misappropriation of trade secret by its former employee as willful and malicious, as required for award of attorney's fees, where employer alleged employee's misappropriation was knowing, deliberate and undertaken by false pretenses).

The fact that Plaintiff recovered only nominal damages for its misappropriation claim is inconsequential. "[N]ominal relief does not necessarily a nominal victory make." *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (where a plaintiff seeks compensatory damages but recovers only nominal damages, the plaintiff is a prevailing party) (internal quotation marks and citation omitted). Attorney's fees may be awarded pursuant to default judgment, provided a hearing is held to determine the amount. *See e.g., Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985); *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1148 (10th Cir. 1990) (district court did not abuse its discretion in adopting magistrate's recommended attorney fee award following entry of default judgment).

The Court finds Western Dakota's misappropriations were "willful and malicious." Western Dakota deliberately and knowingly used Plaintiff's proprietary information to build two HydraCats. Western Dakota profited from the sale of the two HydraCats to Consolidated and Continental, and attempted to conceal both sales. Western Dakota

17

advertised the HydraCat for sale on its website as its own product and invited customers to "Buy direct from the manufacturer and SAVE!." Pl's Ex. 5 at Hr'g on Damages. Western Dakota's company data and information on an aiHit[3] falsely indicated that Western Dakota conceptualized and developed the HydraCat. Pl's Ex. 6 at Hr'g on Damages. This aiHit links directly to Western Dakota's website. Western Dakota continued to advertise the HydraCat as its own after the Court entered default against it herein.

Oklahoma courts generally apportion attorney's fees between fee-bearing claims – those with statutory authority for an award – and non-fee bearing claims – those lacking statutory authority. *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 932 P.2d 1091, 1098 (Okla. 1996). While apportionment is the rule, it is not without exception. *Arnold Oil Properties, L.L.C. v. Schlumberger Technology Corp.*, No. 11-6247, 2013 WL 238857, *2 (10th Cir. January 23, 2013) (unpublished).[4] If a court finds that the fee-bearing and non-fee-bearing claims are direct corollaries of one another then

_____

[3] According to www.aihitdata.com/about, aiHit data is a "unique source of company information" that "stores and continually updates huge amounts of company data" on the Internet. It extracts and monitors data and records changes. It enables one to understand what is happening with a particular company currently and how the company has changed over time. The up-to-date information on Western Dakota on aiHit prior to the damages hearing included the following: "Word spread about the sturdiness and quality of our machine and the "HydraCat" pipe wrangle had been born. Western Dakota Welding struggled to keep up with orders throughout the remainder of 2013 …." Pl.'s Ex. 6 at Hr'g on Damages. This is further evidence that Western Dakota's misappropriations were willful and malicious.

[4] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

apportionment is not required. *See Id.* In other words, if all of the time devoted to the non-fee-bearing claim "would have been necessarily incurred" in connection with a claim that is fee-bearing, then apportionment is not necessary. *See Id. See also Transpower Constructors v. Grand River Dam Authority, et al.,* 905 F.2d 1413, 1423 (10th Cir. 1990) ("a prevailing party can recover fees for that portion of his attorney's work not expended solely in prosecuting a related [non-fee-bearing claim].")

Given the interrelated nature of Plaintiff's misappropriation claim and its other claims, as well as the common core of facts underlying all of the claims, the Court declines to apportion the attorney's fees. Regardless of what theory was presented, the same work in connection with each claim would have been expended. *See Lippoldt*, 468 F.3d at 1222 (plaintiff can obtain an award of attorney's fees for time spent prosecuting the successful claims as well as those related). Obtaining injunctive relief and nominal damages for its misappropriation claim is sufficient for Plaintiff to recover attorney's fees for hours reasonably expended. *See Id*. at 1223.

Under Oklahoma law, an award of attorney's fees must be reasonable. *See Finnell v. Seismic et al.*, 67 P.3d 339, 346 (Okla. 2003). Determination of a reasonable fee involves a two-step process. First, the Court must calculate the lodestar by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Id*. The Oklahoma Supreme Court has adopted "a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee." *Parsons v. Volkswagen of Am., Inc.,* 341 P.3d 662, 671 (Okla. 2014). Second, the Court must consider whether to adjust the

lodestar based on the *Burk* factors. *See Finnell*, 67 P.3d at 346. "In all cases, the attorney fees must bear some reasonable relationship to the amount in controversy." *Parsons*, 341 P.3d at 667. Lawyers seeking an award of attorney fees are required "to present detailed time records to the court and to offer evidence of the reasonable value for the services performed, predicated on the standards within the local legal community." *Green Bay Packaging, Inc.,* 932 P.2d at 1100, *citing Oliver's Sports Center v. National Standard Ins. Co.*, 615 P.2d 291, 295 (Okla. 1980).

Having carefully reviewed Plaintiff's submissions, and particularly the detailed billing records, and having considered the *Burk* factors, the Court finds Plaintiff's requested attorney's fees are reasonable. Accordingly, the Court finds Plaintiff is entitled to an award of attorney's fees in the amount of $108,390.25. This includes Plaintiff's attorney's fees incurred from the origination of the case to March 31, 2017. *See* Pl.'s Ex. 17 at Hr'g on Damages; *see also* [Doc. No. 73-1].

### **Injunctive Relief**

Plaintiff also requests relief in the form of an injunction. Pursuant to OKLA. STAT. tit. 78, § 87(A), actual or threatened misappropriation can be enjoined. Plaintiff bears the burden of proving that a defendant is capable of continuing his misappropriation. *See Chilcutt Direct Mktg., Inc. v. A Carroll Corp., et al.,* 239 P.3d 179, 183 (Okla. Civ. App. 2010). Under Oklahoma law, injunctive relief is not warranted where a plaintiff has a "plain, speedy, and adequate remedy at law." *Powell v. Briscoe, Inc. v. Peters*, 269 P.2d 787, 791 (Okla. 1954); *see also Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1242 (10th

Cir. 2006). "[I]njury or detriment is irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of damages." *Inergy Propane, LLC v. Lundy*, 219 P.3d 547, 561 (Okla. Civ. App. 2008) (injunctive relief has traditionally been granted in this context).

Although Plaintiff has been compensated with an award of monetary damages on its contract claims, future misappropriation remains a concern. The Court finds an injunction is necessary to guard against future misappropriation by Western Dakota. Particularly, the dealings of Western Dakota indicate an "avowed purpose to continue such dealings in the future." *Bitterman v. Louisville & Nashville R.R. Co.*, 207 U.S. 205, 225 (1907) (injunctive relief against ticket brokers unlawfully dealing in non-transferable reduced-rate tickets may extend to the restraining of like dealings as to similar tickets that may be issued in the future). Here, evidence was presented that Western Dakota actually sold two HydraCats directly to Consolidated and Continental in violation of the Manufacturing Agreement. Western Dakota profited from its misconduct. Further, Western Dakota was still falsely advertising the HydraCat for sale as its own product after default was entered. In addition, Western Dakota essentially changed its name during the pendency of this lawsuit and continued its misconduct of advertising the HydraCat as its own under the new company name.

Douglas John Kerkvliet, co-owner, member and president of Western Dakota, admitted in the 341 meeting of creditors[5] before the United States Bankruptcy Court for the District of South Dakota that his sole reason for filing bankruptcy was to "stop" the lawsuit before this Court. [Doc. No. 72-1 at 29]. Finally, Mr. Puckett testified at the damages hearing that because of Western Dakota's actions Plaintiff lost its "market share superiority and exclusivity."

Limiting Plaintiff to monetary damages would require Plaintiff to return to Court each time Western Dakota attempts to sell a HydraCat. Western Dakota's past conduct makes clear the threat of future misappropriation is real. Accordingly, Plaintiff's request for injunctive relief is granted. The Court will enter a separate Default Judgment and Order of Injunction.

## CONCLUSION

The Court finds that Plaintiff is entitled to the following damages for its action against Western Dakota:

1. $454,554.90 in actual damages;

2. $1.00 in nominal damages;

3. $89,952.80 in punitive damages; and

4. $108,390.25 in attorney's fees.

---

[5] Pursuant 11 U.S.C. § 341(a), within a reasonable time after a debtor files a bankruptcy petition, the United States trustee convenes and presides at a meeting of creditors. Prior to the conclusion of the meeting of creditors, the trustee orally examines the debtor. 11 U.S.C. § 341(d). Mr. Kerkvliet's statements were made during the course of his 341 meeting of creditors.

**IT IS SO ORDERED** this 1st day of September 2017.

_____

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE